IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

CELESTE GARRETT,                         )
                                         )
            Plaintiff,                   )
                                         )
vs.                                      )        No. CIV-15-1381-W
                                         )
THE HERTZ CORPORATION,                   )
                                         )
            Defendant.                   )

## ORDER

This matter comes before the Court on the Corrected Motion for Summary Judgment filed by defendant The Hertz Corporation ("Hertz") and the Motion for Partial Summary Judgment filed by plaintiff Celeste Garrett. Based on the parties' submissions, the Court makes its determination.

Summary judgment should be granted if the moving party "shows that there is no genuine dispute as to any material fact[1] and [that it] . . . is entitled to judgment as a matter of law." Rule 56(a), F.R.Civ.P.[2] At this stage of the litigation, the Court does not evaluate the credibility of the witnesses, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

---

[1]"A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" Bird v. West Valley City, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)); "a fact is material when it 'might affect the outcome of the suit under the governing [substantive] law.'" Id. (quoting Liberty Lobby, 477 U.S. at 248).

[2]The federal rules permit a party to "move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Rule 56(a), supra.

(1986), or "weigh the evidence and determine the truth of the matter . . . ." Id. at 249.

Rather, the Court must decide

> whether there is a genuine issue for trial . . . [and] there is no [triable] issue
> . . . unless there is sufficient evidence favoring the nonmoving party for a
> jury to return a verdict for that party.  If the evidence is merely colorable, or
> is not significantly probative, summary judgment may be granted.

Id. at 249-50 (citations omitted).  The Court's inquiry must be whether the evidence, when

viewed "through the prism of the substantive evidentiary burden," id. at 254, "presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." Id. at 251-52.

"In making this determination, . . . [the Court must] 'examine the record and all

reasonable inferences that might be drawn from it in the light most favorable to the non-

moving party.'" Pinkerton v. Colorado Department of Transportation, 563 F.3d 1052,

1058 (10th Cir. 2009)(quoting T-Mobile Central, LLC v. Unified Government of Wyandotte

County, 546 F.3d 1299, 1306 (10th Cir. 2008)(citations omitted)).  That is to say, the Court

must accept the nonmoving party's account of the events giving rise to the lawsuit to the

extent that account is supported by the record and not based upon mere conclusory

allegations. E.g., McKibben v. Chubb, 840 F.2d 1525, 1528 (10th Cir. 1988)(while facts

must be construed liberally in favor of nonmovant, unsupported conclusory allegations

not sufficient to establish disputed issues of fact).

In July 2013, Garrett became employed by Hertz as an interim Finance Business

Partner on a "temp-to-hire" basis at its Administrative and Technology Center in

Oklahoma City, Oklahoma.  Effective November 25, 2013, Hertz hired James Bryan as

the Finance Business Partner, see Doc. 38-4; shortly thereafter, effective December 9, 2013, Hertz hired Garrett as the A2R[3] Financials Manger.  See Doc. 38-5.

"[I]n recognition of . . . the extra effort and hard work that [Garrett] . . . ha[d] provided in 2013," Doc. 44-14, she received "a special-year end bonus of $7,500." Id.  In notifying Garrett of her award on February 17, 2014, Graham M. Allen, Hertz Vice President, Finance Shared Services, wrote:

> During 2013 we faced many unique and difficult challenges most notably the implementation and stabilization of the Oracle ERP system, planning [and] prepar[ing] for the Dollar Thrifty Group integration and the Year End audit process.  We recognize that all of these initiatives, together with the day to day responsibilities of the business, could not have been accomplished without your dedication, commitment and personal sacrifice.

Id.

In July 2014, Hertz posted a job opening for the position of Director, North American General Accounting (hereafter "Director").  See Doc. 44-10.  The notice advised that the Director's primary mission would be "to ensure all activities related to the Accounting areas [would be] . . . properly accounted for and reported in the Hertz Financial Statements[,]" id.; it further advised that the Director's "[a]reas of responsibility [would] include:   Revenue and Licensee Accounting, Program Accounting, [and] Centralized Reconciliations." Id.

Applicants were required to have a Bachelor of Science Degree in Accounting, see id., although a Master's Degree was preferred.  See id.  Applicants were also required to be certified public accountants, see id., with "3-5 years [of] public accounting experience preferred[,]" id., and "have strong accounting experience (10+ years), a proven track

---

[3]"'A2R' is shorthand for 'accounting to report a financial report.'"  Doc. 38-1 at 9, ¶ 3.

record in supervising large groups of employees, [and] experience in coordinating an organization with diverse functions and processes." Id. Applicants were required to possess the "confidence to work with senior management[,]" id., and to "have a good knowledge of Finance ERP Systems, preferably Oracle EBS[,]" id.; mandatory skills also included "[e]xceptional communication and networking skills[,]" id., and "[e]xceptional analytical skills[.]" Id.

Approximately thirteen individuals applied, see Affidavit of Lena Teddy (March 30, 2017) at p. 1, ¶ 4; two were considered—Garrett and Bryan. Garrett was interviewed over a period of "[a] few days[,]" Deposition of Celeste Garrett (November 11, 2016) at p. 87, line 16 (hereafter "Garrett Deposition"), by Allen, Travon Williams, Senior Human Resources Business Partner, Lena Teddy, Human Resources Business Partner II, Jeff Lloyd, Senior Director of Worldwide Fleet Accounting, and Eric Dugan, Assistant Corporate Controller (formerly, Senior Financial Business Partner, acting as Interim Senior Director, Program Accounting).[4]  Bryan was also interviewed.[5]

---

[4]But see Deposition of Eric Dugan (March 2, 2017) at p. 17, lines 3-4 (Garrett interviewed by Allen, Williams and Dugan)(hereafter "Dugan Deposition").

[5]The record shows the following with regard to the identity of Bryan's interviewers:
(1) Deposition of Lena Teddy (March 2, 2017) at p. 60, lines 23-24 (hereafter "Teddy Deposition")(Allen, Teddy, Lloyd, Williams);
(2) Dugan Deposition at p. 17, lines 14-15 (Allen, Williams, Lloyd);
(3) Hertz's Second Set of Supplemental Responses to Plaintiff's Opening Discovery Requests (June 14, 2016), Response to Interrogatory No. 2 (Allen, Dugan, Williams, Teddy and Christa Ramey (a corporate recruiter who had processed Garrett's application)); Second Supplemental Response to Interrogatory No. 2 (Dugan "did not interview . . . Bryan; Lloyd "was the fourth individual who interviewed . . . Bryan"); and
(4) Deposition of Graham M. Allen (March 28, 2017) at p. 40, lines 19-23 ("I was under the impression that [Dugan] . . . interviewed both . . . [b]ecause when we went through the feedback exercise, he had comments on both").

Although Allen was "the hiring manager for th[e] position[,]" Deposition of Graham M. Allen (March 28, 2017) at p. 34, lines 16-17 (hereafter "Allen Deposition"), he "received feedback from the various interviewers." Affidavit of Graham M. Allen (March 31, 2017) at p. 2, ¶ 7 (hereafter "Allen Affidavit"). "None of the interviewers [had] recommended [Garrett] . . . for Director[,]" id., and Allen selected Bryan in August 2014.

In the email announcing Bryan's promotion dated September 4, 2014, Allen noted that Bryan had "spent just under five years in public accounting with both Grant Thorton and [Pricewaterhouse Coopers, LLP (PwC),]" Doc. 38-9, that he held "a [B]achelor's [D]egree in Accounting and Finance from the University of Arkansas[,]" id., and that he "is a Certified Public Accountant." Id. Allen also identified the employees who would report directly to Bryan, one of whom was Garrett. See id.

Garrett confronted Allen that day, and he told her "that he [had] picked the one that he felt was best for the job." Garrett Deposition at p. 113, lines 9-10. According to Garrett, Allen also advised her that she "was promotable[,]" id. at p. 218, line 7, and "had all the requirements, but [she] . . . hadn't been in . . . [her] position long enough and that he thought . . . Bryan was a better fit." Id. lines 7-9.

Allen's statements prompted Garrett to send the following email to Allen and Teddy:

> 1. How is it that I have not been in my current position long enough, but [Bryan] . . . has been in his position long enough? Before [he] . . . started, I was doing his job and my job. I actually trained him.
>
> 2. How can someone receive a promotion without having the minimum requirements for the position? Based on his LinkedIn profile, he has less than 8 years of experience with minimal or no supervisory experience.

Doc. 44-17.

5

Four days later, on September 8, 2014, Garrett filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), see Doc. 44-23, and claimed

(1) that she had "applied for the position of Director . . . and [had been] . . . notified on or about August 28, 2014, [that she had] . . . not [been] selected for the position, while a younger less qualified male employee . . . [had been] selected[,]" id.;

(2) that she had been "told by . . . Allen . . . that [she] . . . had not been in [her] . . . position long enough to be promoted[,]" id.; and

(3) that she "believe[d] [that she] . . . ha[d] been discriminated against because of . . . [her] sex (Female) and age (42) . . . ." Id.

By letter addressed to Bryan and dated November 11, 2014, Garrett resigned her employment, effective November 28, 2014. See Doc. 44-28. She wrote that "[o]ver the last year and a half, . . . [she had] dedicated numerous hours during the week and weekends in helping Hertz try to meet [its] . . . financial reporting goals[,]" id., and that she had "concluded that . . . [her] contributions have been unrewarded." Id. Garrett stated that she had "much to offer and fe[lt] frustrated that . . . [she was] consistently passed over for promotions . . . ." Id.

Prior to her resignation, Garrett had contacted K-Force, a recruiting company; she was interviewed on November 6, 2014, hired on November 14, 2014, and began work on December 2, 2014. See Garrett Deposition at p. 138, lines 13-23; Doc. 38-14.

The EEOC issued a Notice of Right to Sue on October 14, 2015, and Garrett filed the instant lawsuit on December 28, 2015. See Doc. 1. She alleged in her complaint that Hertz's failure to promote her to the position of Director constituted gender discrimination

prohibited by both Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and the Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. § 1101 et seq.   Garrett further asserted she had been subjected to a hostile work environment, e.g., Doc. 1 at 6, ¶ 41, which also violated Title VII and the OADA, and that after she filed her EEOC charge, Hertz retaliated by "remov[ing] her from consideration for all other jobs [for which] she[ ] [had] applied . . ." id. at 5, ¶ 31, thereby leaving her "no choice but to resign her employment[.]"   Id. ¶ 32.

Hertz has first argued that Garrett cannot pursue her federal and state law retaliation claims because she failed to exhaust her administrative remedies.   Garrett has conceded this argument, see Doc. 44 at 42, and the Court finds that Hertz is therefore entitled to dismissal of Garrett's Title VII and OADA retaliation claims.[6]

Hertz has next argued that Garrett cannot pursue her hostile work environment claims under federal and state law, not only because she again failed to exhaust her administrative remedies as to these claims, but also because her claims fail as a matter of law.   Garrett has responded in opposition to both arguments; she has further argued in support of her Motion for Partial Summary Judgment that Hertz is precluded from asserting exhaustion as an affirmative defense.

In its answer to Garrett's complaint, Hertz, under the heading "Tenth Affirmative Defense," Doc. 5 at 8, ¶ 10, had contended that "[s]ome or all of . . . [Garrett's] allegations

---

[6]The OADA, like Title VII, requires a plaintiff to exhaust her administrative remedies through the filing of a charge of discrimination.   See 25 O.S. § 1350(B)(to have standing to allege discrimination from employment-related matter, aggrieved party must within 180 days from last date of alleged discrimination, file charge of discrimination with Attorney General's Office of Civil Rights Enforcement or EEOC alleging basis of discrimination).

may be barred by [her] . . . failure to satisfy the procedural and jurisdictional prerequisites (e.g., timely seeking and/or exhausting administrative remedies) to such allegations." Id.[7] Garrett has argued that because that defense not only "fail[s] to satisfy [the] . . . pleading requirements for a failure to exhaust defense[,]" Doc. 36 at 12, but also is unsupported by any evidence, Hertz cannot now rely upon the same in support of its Motion for Summary Judgment.

The federal rules provide that "a party must . . . state in short and plain terms its defenses to each claim asserted against it[,]" Rule 8(b)(1)(B), F.R.Civ.P., and "affirmatively state any . . . affirmative defense[.]" Rule 8(c)(1), supra. In doing so, the party gives notice to the opposing party of the defense and the grounds upon which its rests.

Even if the Court found that Hertz's Tenth Affirmative Defense as set forth in its answer is impermissible boilerplate and that Garrett had insufficient notice of the nature of that defense under Rule 8, supra, and could not ascertain the basis for it,[8] such finding would not prevent the Court from permitting Hertz to amend its answer. Nothing would

---

[7]To the extent, Hertz has contended that exhaustion of remedies is jurisdictional, the Court notes that the Tenth Circuit has "called into question . . . [the] circuit's Title VII jurisdictional cases." Arabalo v. City of Denver, 625 Fed. Appx. 851, 864 (10th Cir. 2015)(citing Gad v. Kansas State University, 787 F.3d 1032, 1039-40 (10th Cir. 2015))(cited pursuant to Tenth Cir. R. 32.1). "Even if administrative exhaustion is only a condition precedent to suit," id., as case law now suggests, the Court is still required to determine whether that condition has been met in this instance. E.g., Wickware v. Johns Manville, 2017 WL 167460 *11 (10th Cir. 2017)(even if exhaustion not jurisdictional, it is condition precedent to suit).

[8]While Garrett has complained that Hertz's Tenth Affirmative Defense provides "no notice as to [its] . . . factual or legal basis[,]" Doc. 36 at 11, Garrett had no difficulty in understanding the relationship between that defense and her retaliation claim, which she conceded had not been exhausted. See Doc. 44 at 42.

be gained, however, by requiring Hertz to engage in that exercise at this stage of the litigation. Accordingly, Garrett is not entitled to summary judgment because Hertz, in her opinion, "has failed to satisfy its pleading requirements . . . ," Doc. 48 at 7, and the Court must now examine the record to determine whether Garrett has in fact exhausted her administrative remedies with regard to her hostile work environment claim.

Garrett's EEOC Charge makes no reference to a hostile work environment: she checked only the boxes marked "Sex" and "Age." See Doc. 44-23. Moreover, rather that checking the box for "[c]ontinuing [a]ction," id., Garrett indicated that August 28, 2014, was both the "[e]arliest" and the "[l]atest" "[d]ate(s) [the] discrimination took place." Id. (capitalization omitted). And while an aggrieved employee's descriptive statement in her charge regarding "the particulars," id. (capitalization omitted), of her claim, may provide additional information regarding the nature of the alleged discrimination, Garrett asserted only that she had

> applied for the position of Director . . . and [had been] . . . notified on . . .
> August 28, 2014, [that she had] . . . not [been] selected for the position . . .
> because . . . [she] . . . had not been in [her] . . . position long enough to be
> promoted.

Id.

The claims in this lawsuit are "'limited by the scope of the administrative investigation that can reasonably be expected to follow [Garrett's EEOC] . . . [C]harge of [D]iscrimination.'" Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007)(quotation omitted). This is so because in Title VII and OADA cases, "[e]xhaustion . . . serves the important purposes of 'protect[ing] employers by giving them notice of the discrimination claims being brought against them and providing the EEOC . . . with an opportunity to

conciliate th[ose] claims.'" Gad v. Kansas State University, 787 F.3d 1032, 1040 (10th Cir. 2015)(quotation omitted). The EEOC charge must therefore be "'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" Wickware v. Johns Manville, 2017 WL 167460 *12 (10th Cir. 2017)(quoting 29 C.F.R. § 1601.12(b)); e.g., Jones v. Needham, 2017 WL 1959972 *3 (10th Cir. 2017)(given exhaustion's goals, EEOC charge must contain the general facts concerning the discriminatory actions later alleged in lawsuit).

Even construing Garrett's EEOC Charge liberally, as she has urged the Court to do, the Court finds no factual allegations in that Charge "of treatment in manner or degree sufficient to allege a hostile work environment." Mitchell v. City and County of Denver, 112 Fed. Appx. 662, 668 (10th Cir. 2004)(cited pursuant to Tenth Cir. R. 32.1); e.g., Needham *4 (court's inquiry must be whether facts alleged in EEOC charge are sufficiently related to claim in complaint such that those facts would prompt investigation of that claim). Accordingly, Garrett's EEOC Charge failed to alert Hertz[9] that Garrett, in addition to complaining about Allen's decision to promote Bryan, was also contending that she had been subjected to a hostile work environment based on Bryan's post-promotion

---

[9]Garrett has also argued that the Court should deem her claim of hostile work environment exhausted because it falls within the scope of the EEOC's actual investigation in this case. To the extent permissible, see n.29, infra, and because Garrett cannot be prejudiced by documents that she submitted for review, the Court has considered Hertz's response to Garrett's EEOC charge, see Doc. 44-27, and the EEOC's Determination issued after investigating that charge. See Doc. 44-26. In doing so, the Court finds the EEOC limited its investigation to Garrett's claim that she was the victim of gender discrimination because she was not promoted on August 28, 2014, and did not address Bryan's post-promotion behavior.

conduct.[10]  Garrett therefore did not exhaust her administrative remedies before pursuing

her hostile work environment claim[11] in court and such claim should be dismissed.[12]

---

[10]In describing Bryan's conduct that Garrett has contended gave rise to her claim of hostile work environment, Garrett testified that Bryan

(1) had laughingly commented on a billboard advertisement about treatment for male impotency when she, Bryan and two other male Hertz employees were in a car, see Garrett Deposition at p. 61, line 20 to p. 62, line 7;

(2) had told employees whom Garrett supervised "'that they were going to be fired because they could not get the InterCompany accounts in balance[,]'" id. at p. 166, lines 4-6, which was Bryan's way of "telling them that . . . [she] wasn't a good leader," id. lines 9-10, and which "made them double guess their positions, or their stability in the[ir] positions[,]" id. lines 12-13;

(3) had sent her a picture of a female with her hair in curlers, over whose face he had put the face of Curtis Woods, Garrett's former supervisor, see id. at p. 156, lines 13-14; id. at p. 157, lines 10-15; id. at p. 158, lines 15-25; id. at p. 159, lines 1-11;

(4) had also sent her a picture of "a little girl hitting herself over the head with a hammer[,]" id. at p. 156, lines 14-15;

(5) on one occasion had asked her why she had left the office early, when she had worked from 7:00 a.m. to 5:30 p.m. that day, see id. at p. 161, line 16 to p. 162, line 10, and had remarked that she "needed to work more hours[,]" id. line 4;

(6) had told her, without explanation, that she could no longer contact "corporate" first and that she "had to go through [him or Dugan] . . . before contacting corporate[,]" id. at 165, lines 11-12;

(7) "when anything went wrong, . . . [had] said, 'Blame Celeste[,]'" id. at p. 167, lines 10-11;

(8) had "asked . . . [her] if [she had] . . . reported him for sexual harassment . . . [to Hertz's] H[uman] R[esources] department[,]" id. at p. 162, lines 19-21; see id. at p. 164, lines 2-14; and

(9) had accused her of inadequately training her employees, see id. at p. 167, lines 3-4, and had blamed her for incorrect files when "[i]t was his manipulation of th[ose] file[s] that made [them] . . . incorrect." Id. lines 7-8.

[11]Whether framed as a jurisdictional matter or a condition precedent to suit, it is Garrett's burden to demonstrate that she has met Title VII and the OADA's exhaustion requirements. E.g., Gad, 787 F.3d at 1041 (condition precedent to suit is "'burden for plaintiffs to carry'"); Arabalo, 625 Fed. Appx. at 860 (plaintiff's "need to disclose [to EEOC] her bases supporting her alleged claim is a condition precedent to her suit, not a mere affirmative defense for which the defendant must bear the burden").

[12]Because the Court has determined that Garrett has failed to exhaust her administrative remedies with regard to her claim of hostile work environment, the Court deems moot the parties' arguments regarding Hertz's "Ninth Affirmative Defense."

All that remains in this action[13] is Garrett's claim that Hertz's failure to promote her to the position of Director because of her gender violated both Title VII and OADA. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The OADA also makes "[i]t . . . a discriminatory practice for an employer . . . to otherwise . . . discriminate against an individual . . . because of . . . sex . . . ." 25 O.S. § 1302(A).[14]

In analyzing Garrett's Title VII and OADA claims, which are grounded solely on circumstantial evidence, the Court has applied the three-part framework developed by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), which, together with subsequent decisions, "'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'" <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 142 (2000)(quoting <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993)).

---

[13]Based on the parties' submissions, it appears that Garrett's allegations, arguments and authorities regarding "constructive discharge" are advanced in support of, and as part of, her claim for hostile work environment, <u>see</u> Doc. 38-1 at 30-31; Doc. 44 at 36-38; <u>id.</u> at 13, RDF39 ("Plaintiff submitted her resignation letter as a result of the hostile work environment"), rather than as an independent claim for relief. <u>See</u> <u>Green v. Brennan</u>, 136 S. Ct. 1769, 1777 (2016)(constructive claim has two elements: plaintiff must first prove discrimination by employer to the point where a reasonable person in employee's position would have felt compelled to resign and then show he actually resigned). However, to the extent, if any, Garrett's "constructive discharge" claim is a separate and independent claim, which became actionable, if at all, on the date Garrett resigned, the Court likewise dismisses that claim for failure to exhaust administrative remedies.

[14]"[C]laims under the OADA are evaluated using the same standards as claims under Title VII, and a claim that fails under Title VII will also fail under the OADA." <u>Cunningham v. Skilled Trade Services, Inc.</u>, 2015 WL 6442826 *3 (W.D. Okla. October 23, 2015)(citations omitted).

Under the <u>McDonnell Douglas</u> burden-shifting approach, a complainant such as Garrett must first make a prima facie showing of gender discrimination, <u>e.g.</u>, <u>Bird v. West Valley City</u>, 832 F.3d 1188, 1200 (10th Cir. 2016),[15] and because Hertz has not disputed that Garrett "can establish a prima face case[,]" Doc. 38-1 at 20,[16] the burden shifts to Hertz, as employer, "'to articulate a legitimate, nondiscriminatory reason for the adverse action.'" <u>Bird</u>, 832 F.3d at 1200 (quoting <u>EEOC v. PVNF, L.L.C.</u>, 487 F.3d 790, 800 (10th Cir. 2007)). "This burden is one of production, not persuasion; it . . . 'involve[s] no credibility assessment.'" <u>Reeves</u>, 530 U.S. at 142 (quoting <u>St. Mary's Honor Center</u>, 509 U.S. at 509).

Hertz has met its burden by offering admissible evidence "that Bryan was [determined to be] the better candidate for the position[,]" Doc. 38-1 at 21, "based on [his] . . . prior public accounting experience[.]" <u>Id.</u>[17] Such is sufficient for a trier of fact to

---

[15]To state a prima facie case of discrimination under <u>McDonnell Douglas</u>, a plaintiff must demonstrate "that (1) she belongs to a protected class; (2) she applied for an available position for which she was qualified; (3) she 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" <u>Tabor v. Hilti, Inc.</u>, 703 F.3d 1206, 1216 (10th Cir. 2013) (quotation and further citation omitted)(footnote deleted).

[16]While Garrett need "only [make] a 'de minimis showing' to establish a prima facie case of gender discrimination under the <u>McDonnell Douglas</u> framework[,]" <u>Bird</u>, 832 F.3d at 1200 (citation omitted), as the Court has noted, <u>see</u> n.15, <u>supra</u>, "a . . . element critical to [her] . . . prima facie case[ ] is that [she] . . . demonstrate that 'the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination."'" <u>Bird</u>, 832 F.3d at 1200 (quotations omitted). For purposes of its Motion for Summary Judgment, Hertz has not argued that Garrett has not done so.

[17]<u>See</u> Allen Deposition at p. 80, line 24 to p. 81, line 4 ("So what we were looking for was someone who had worked for one of the large public accounting firms. And typically in those public accounting firms they have experience working in audits for like a PwC . . . or any one of the large public accounting firms that provide audit services to public companies."). <u>See</u> <u>also</u> Allen Affidavit at p. 2, ¶ 8 ("After receiving the feedback from the [other] interviewers, I agreed that Bryan was the best person for the position. . . . [M]y first reason for selecting Bryan was because he had previously worked for PwC, who were our auditors, and therefore Bryan was very

conclude, as Hertz has asserted, that Garrett was not promoted because she "lacked the type of valuable public accounting experience that Bryan had." Id. at 22. Accordingly, the presumption of gender discrimination created by Garrett's prima facie case "simply drops out of the picture[,]"[18] St. Mary's Honor Center, 509 U.S. at 511 (citation omitted), and the burden shifts back to Garrett "to establish a genuine issue of material fact that [Hertz's] . . . reasons were pretextual." Bird, 832 F.3d at 1201. And if Garrett "'presents evidence sufficient to create a genuine factual dispute regarding the veracity of [Hertz's] . . . nondiscriminatory reason[s], [the Court must] . . . presume the jury could infer that [Hertz] . . . acted for a discriminatory reason and must deny summary judgment.'" Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1280 (10th Cir. 2010)(quotation omitted).

"Evidence of pretext may . . . take a variety of . . . forms." Swackhammer v. Sprint/ United Management Co., 493 F.3d 1160, 1168 (10th Cir. 2007). A plaintiff may show pretext by revealing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for th[ose] . . . reasons.'" Jones, 617 F.3d at 1280 (quotation

---

familiar with their policies, procedures, and protocols. Bryan had also worked for the actual manager that was performing the audit for PwC at Hertz. That gentleman had indicated to me that he believed Bryan to be a very capable accountant. The second reason was that Bryan had volunteered his services to assist with some of the remediation of the various issues and weaknesses that had been found prior to Hertz's announcement that it would be filing a restatement [with the Securities and Exchange Commission]."); Dugan Deposition at p. 116, lines 11-17 ("The main reason [Bryan was selected] would relate to the public accounting experience in light of our restatement that that we were in the midst of. That experience was incredibly valuable for that positon given where we were. We were not in a normal steady state, we were in a crisis situation where you needed a depth of knowledge.").

[18]See nn.15, 16, supra.

omitted); e.g., Reeves, 530 U.S. at 147 (proof that defendant's explanation is unworthy of credence is one form of circumstantial evidence that is probative of intentional discrimination).

In support of her contention that Hertz's claimed reasons are pretextual,[19] Garrett has offered the following:

(1) she was objectively qualified for the position[20] and, in her opinion, she was "better qualified . . . because she [and not Bryan] met all of the stated qualifications, had more experience in the accounting industry as well as with . . . [Hertz], and had actually been performing some of the job duties of the position prior to applying for it[,]" Doc. 44 at 26;

(2) the decision-making "process was wholly subjective[,]" id. at 27, and "susceptible to discriminatory abuse[,]" id. (capitalization and emphasis deleted), as evidenced by Hertz's failure to follow "normal promotional procedure[,]" id. at 28;

(3) Hertz "has provid[ed] shifting and inconsistent explanations for its decision to promote Bryan instead of . . . [her,]" id. at 29; and

---

[19]Garrett has also asserted that Allen treated women differently than men. She testified that "[i]n meetings, . . . [Allen] would downplay the women . . . ," Garrett Deposition at p. 113, lines 17-18, and that "[w]hen someone left, it seemed like the . . . higher positions were always filled with men." Id. at p. 127, lines 4-6. The Court finds, without more, that Garrett's subjective belief and speculation that Allen was arguably biased against women does not support an inference of discriminatory intent. Garrett has presented no evidence that any other interviewer was similarly biased or that Allen's behavior during these meetings was directed at her or is somehow tied to the employment action at issue in this case.

[20]Garrett graduated from Eastern Illinois University with a Bachelor of Science Degree in Accounting and a Master's Degree in Business Administration. See Doc. 44-5 at 1. She has been a certified public accountant since 2001. See id. Bryan graduated from the University of Arkansas, Fayetteville, with a Bachelor's Degree in Business Administration, with a double major in Accounting and Finance Commercial Banking. See Doc. 44-18 at 2. He too is a certified public accountant. See id.

15

(4) Hertz has further "offered conflicting and inconsistent evidence regarding the individual(s) who selected [the] members of the interview panel and [who interviewed the applicants as well as] Dugan's involvement with the . . . panel[ists] and selection decision." Id. at 32.

The Court addresses these matters seriatim. "[Q]ualifications evidence may suffice, at least in some circumstances, to show pretext." Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006)(citations omitted). However, as the United States Court of Appeals for the Tenth Circuit has "caution[ed,] when considering the relative merits of individual employees[,]" Jaramillo v. Colorado Judicial Department, 427 F.3d 1303, 1308 (10th Cir. 2005), this Court "may not 'act as a super personnel department that second guesses employers' business judgments.'" Id. (quotation omitted). "[M]inor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext[,]" id. at 1308-09 (citation omitted); "where there are competing qualified candidates, 'to suggest that an employer's claim that it . . . [promoted] someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an overwhelming disparity in qualifications.'" Tran v. Sonic Industries Services, Inc., 490 Fed. Appx. 115, 119 (10th Cir. 2012)(quotation omitted)(cited pursuant to Tenth Cir. R. 32.1).

"[I]n assessing [Hertz's] . . . explanations for [Garrett's nonselection] . . . ," Bird, 832 F.3d at 1201, the Court must "'examine the facts as they appear[ed] to [Allen,] the person making the decision.'" Id. (quoting Conroy v. Vilsack, 707 F.3d 1163, 1174 (10th Cir. 2013))(emphasis deleted); e.g., Johnson v. Weld County, 594 F.3d 1202, 1211-12

(10th Cir. 2010)(court must examine competing candidates' qualifications in light of facts available to decisionmaker at time of decision, not in light of facts that might have been apparent to others or that might have become apparent in hindsight); <u>Kelley v. Goodyear Tire & Rubber Co.</u>, 220 F.3d 1174, 1178 (10th Cir. 2000)(it is employer's perception that is relevant, not employee's subjective evaluation of his own relative performance). Thus, the pertinent question in determining pretext in this instance is not whether Hertz's decision to promote Bryan, even though he lacked the preferred Master's Degree as well as the required "ten-plus years in accounting[,]" Allen Deposition at p. 69, line 8-9; <u>e.g.</u>, <u>id.</u> line 10, was wise, fair or correct; rather, the relevant inquiry is whether Allen, after input from the other interviewers,[21] genuinely believed that Bryan's "prior public accounting experience, particularly his experience with PwC[,]"[22] Doc. 38-1 at 21,[23] "was

---

[21]Allen made his decision "[a]fter receiving . . . feedback from the [other] interviewers[.]" Allen Affidavit at p. 2, ¶ 8. While Teddy agreed that Garrett possessed the "required qualifications" for the Director position, <u>see</u> Teddy Deposition at p. 43, lines 2-5, Teddy was of the opinion that Garrett did not possess the "minimum qualifications" for the position because Garrett lacked "exceptional communications skill[s]." <u>Id.</u> at p. 41, line 25 to p. 42. Teddy testified that "[d]uring the interview [Garrett] . . . would use poor grammar[,]" <u>id.</u> at p 43, lines 22-23, and "did not communicate in always specific detailed responses . . . ." <u>Id.</u> at p. 43, line 25 to p. 44, line 1. Teddy also believed that Garrett did not "display[ ] a great deal of confidence." <u>Id.</u> at p. 44, lines 4-5.

Dugan based his decision in part on Garrett's response to an question he had asked regarding "the biggest challenge," Dugan Deposition at p. 21, line 22, she would face in her role as Director. A deciding factor for Dugan was Garrett's "concern about interacting with management," <u>id.</u> at p. 24, lines 2-3, which was "a critical issue[,]" <u>id.</u> line 3, and the fact she had not previously interacted with senior management on a regular basis. <u>See id.</u> lines 4-6.

[22]While working with Hertz, Garrett also had experience with PwC at "all levels." Garrett Deposition at p. 70, line 11; <u>e.g.</u>, <u>id.</u> at p. 208, line 20 to p. 210, line 11. She conceded, however, that she had never audited a public or private company, <u>e.g.</u>, <u>id.</u> at p. 18, lines 3-7, or "signed off on an audit[.]" <u>Id.</u> line 8; <u>e.g.</u>, <u>id.</u> line 9. She further conceded that while she was "doing public accounting[,]" <u>id.</u> at p. 266, lines 23, she was not "performing public accounting work like . . . Bryan[.]" <u>Id.</u> lines 20-21; <u>e.g.</u>, <u>id.</u> line 22.

[23]Allen testified that although he knew that Garrett "had more than 10 years of accounting experience[,]" Allen Deposition at p. 72, lines 7-8, she lacked "[t]he three to five years of what [he]

critical . . . because of the [then] ongoing audit of Hertz."[24] Id.; e.g., Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004).

Indeed, as the Tenth Circuit has repeatedly held, "[e]vidence that the employer should not have made the [employment] . . . decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." Swackhammer, 493 F.3d at 1169-70 (citations omitted). Viewing the evidence in the light most favorable to Garrett, the Court finds that Garrett has not come forward with specific facts that show an "overwhelming disparity in qualifications" between herself and Bryan, that is, that Bryan's qualifications were overwhelmingly inferior to Garrett's qualifications, or come forward with specific facts that challenge Allen's statement that he "agreed that Bryan was the best person for the position[,]" Allen Affidavit at 2, ¶ 8, such that "a jury could find that . . . [Hertz's decision to promote Bryan] was anything other than a good faith business decision." [25] Tran, 490 Fed. Appx. at 119.[26]

---

. . . call[ed] public accounting experience [that was] preferred." Id. at 80, lines 12-13. He further testified that while the job announcement did not indicate that applicants "need[ed] to have experience with a large public accounting firm[,]" id. at p. 81, lines 6-7, and did not define "the term 'public accounting[,]'" id. line 10, "in the industry when you tell people that you're looking for public accounting experience, most people interpret that to mean working with one of the large audit firms." Id. lines 13-16.

[24]See n.17, supra.

[25]See Tran, 490 Fed. Appx. at 121 (employee's disagreement with employer's opinion of her performance or skills does not prove discriminatory intent).

[26]Garrett has testified that she was the victim of gender discrimination "[b]ecause [Dugan] . . . was more buddy-buddy with . . . [Bryan] and they would go out . . . to the bars or hang out after work, and they were always laughing in the office and . . . after [Bryan] . . . got the promotion, he kind of stopped talking to . . . [her]." Garrett Deposition at p. 117, lines 7-11; e.g., id. at p. 123, lines 24-25 (Dugan "would be more likely to [discriminate], . . . because he and [Bryan] . . . were

As stated, Garrett has also complained that Hertz's decision-making "process was wholly subjective[,]" Doc. 44 at 27, and "susceptible to discriminatory abuse[,]" id. (capitalization and emphasis deleted), because Hertz failed to follow "normal promotional procedure." Id. at 28. While the Tenth Circuit has recognized that a plaintiff may show pretext by producing evidence of an employer's "'use of subjective criteria[,]'" Jaramillo, 427 F.3d at 1308 (quotations omitted), and that "'the presence of subjective decision-making can create a strong inference of discrimination,'" Turner v. Public Service Co. of Colorado, 563 F.3d 1136, 1145 (10th Cir. 2009)(quotation omitted), the circuit court has also recognized that "the use of subjective considerations by employers is 'not unlawful per se." Id. (quotation omitted). Because "'such criteria "must play some role" in certain management decisions[,]'" id. (quotations omitted), "'the use of subjective factors [is reviewed] on a case-by-case basis.'" Id. (quotations omitted). Courts "'typically infer pretext . . . only when the criteria on which the employer[ ] ultimately rel[ied was] . . . entirely subjective in nature.'" Id. (quotation omitted)(emphasis deleted); e.g., Tran, 490 Fed. Appx. at 119.

---

friends"); e.g., id. at p. 124, lines 8-10 ("he would probably choose his buddy over someone that could really do the job").

As the Tenth Circuit has made clear, "motives such as friendship, nepotism, or personal fondness or intimacy . . . suffice to remove the case from Title VII's anti-discrimination provisions." Clark v. Cache Valley Electric Co., 573 Fed. Appx. 693, 697-98 (10th Cir. 2014)(citing Swackhammer, 493 F.3d at 1171–72 (no inference of discrimination where supervisor treated male employee with whom he was friends "differently than any of his other direct reports, male or female"); Neal v. Roche, 349 F.3d 1246, 1251 (10th Cir. 2003)(collecting cases that illustrate that motives such as friendship, cronyism or nepotism do not constitute actionable discrimination, "even when they benefit the nonprotected friend or relative at the expense of a more qualified, protected person"))(further citation omitted)(cited pursuant to Tenth Cir. R. 32.1).

The job requirements for the Director position were not entirely subjective; the announcement contained both objective and subjective components. See Tran, 490 Fed. Appx. at 119 (personal skills such as communicating and working effectively with senior management have obvious objective component to them). The job announcement, as Hertz has conceded, did not specify that experience with a large public accounting firm was preferred, e.g., Allen Deposition at 80, lines 12-13; e.g., id. at p. 81, lines 6-7, or define "the term 'public accounting.'" Id. line 10. Such omissions, however, in the absence of any evidence offered by Garrett "that undercuts the legitimacy of the [public accounting] skills," Tran, 490 Fed. Appx. at 118, that Allen preferred for the Director position, see Allen Deposition at p. 83, lines 24-25 ("my preference would be three to five years' public accounting experience with a Big Four company"), do not create a genuine issue of material fact that Hertz's reasons for Bryan's promotion were a pretext for gender discrimination. E.g., Jones v. Barnhart, 349 F.3d 1260, 1268 (10th Cir. 2003)(each selected candidate had significantly more experience that plaintiff, and such experience seems a reasonable criterion on which to base a decision to promote).

The Tenth Circuit has also recognized that a plaintiff may show pretext by producing evidence of "'disturbing procedural irregularities[,]'" Jaramillo, 427 F.3d at 1308 (quotations omitted), including deviations from normal company procedure, during the selection process. "Such irregularities can be sufficient to call into question the employer's honesty and good faith in making the [employment] . . . decision and, consequently, establish pretext." Bird, 832 F.3d at 1203 (citation omitted). Garrett has contended that pretext can be inferred in this case from the use of different interviewers and the failure of those interviewers to take notes.

Garrett, however, has failed to show how the decision to use different interviewers (especially given the reason that Dugan did not interview Bryan[27]) or the failure of those interviewers (except Teddy, see Docs. 44-1, 44-12) disadvantaged women over men. As case law teaches, "not every failure to follow every [corporate] directive [or] . . . policy . . . gives rise to an inference of pretext for invidious discrimination[,]" Johnson, 594 F.3d at 1213 (citation omitted), since "[e]mployers often fail to follow [corporate] . . . policy . . . for benign (sometimes even very sound) business reasons[.]" Id.; e.g., Hysten v. Burlington Northern Santa Fe Railway Co., 415 Fed. Appx. 897, 909 (10th Cir. 2011)(mere fact employer failed to follow its own internal procedures does not necessarily suggest that substantive reasons given by employer for its employment decision were pretextual)(cited pursuant to Tenth Cir. R. 32.1). "For an inference of pretext to arise on the basis of a procedural irregularity, . . . there must be some evidence that the irregularity 'directly and uniquely disadvantaged [the aggrieved] . . . employee[,]'" id. (quotation omitted); no such evidence has been presented in this case.[28]

---

[27]As the record shows, while Teddy agreed that "[i]t's not common [for there to be different panelists for the same position], . . . sometimes [it does happen] with circumstances like this." Teddy Deposition at p. 66, lines 17-18. Dugan "has a very high degree of expertise in accounting knowledge and[, according to Teddy, Allen] . . . selected him to interview . . . Garrett to determine her level of accounting expertise." Id. at p. 65, lines 8-11. At the same time, Allen made the decision that Dugan would not interview Bryan "[b]ecause [Dugan] . . . had worked extensively with . . . [Bryan]." Dugan Deposition at p. 17, line 25.

[28]Dugan testified that "we followed our hiring practice of posting our job, reviewing applicants, interviewing applicants that were qualified, making a decision amongst the interview panel who would be the most qualified, . . . and ma[king] a hiring decision." Id. at p. 116, lines 1-7. Because "'the alleged procedural irregularit[ies, in this case, the use of different interviewers and the failure to take notes, would] disadvantage[ ] all potential applicants' for a promotion, rather than just members of a protected class, the fact that a company failed to follow its own procedures 'does not suggest either that the defendant's proffered reasons for its employment decisions were pretextual or that the defendant was motivated by illegal discrimination.'" Kendrick v. Penske Transportation Services, Inc., 220 F.3d 1220, 1231 n.9 (10th Cir. 2000)(quotation omitted).

Garrett has further argued that Hertz's "shifting and inconsistent explanations for its decision to promote Bryan instead of . . . [her,]" Doc. 44 at 29, give rise to an inference of gender discrimination. In this connection, "[i]nconsistency evidence . . . has traditionally been associated with proving pretext." Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1002 (10th Cir. 2001)(citation omitted); e.g., Jones, 617 F.3d at 1280 (plaintiff may show pretext by revealing inconsistencies, incoherencies or contradictions in employer's proffered legitimate reasons for its action that reasonable factfinder could find them unworthy of credence and infer that employer did not act for those reasons).

In support of her argument, Garrett has compared Hertz's Responses to Plaintiff's First Supplemental Discovery Requests, wherein Hertz "state[d] that in addition to other factors, . . . Bryan had more valuable public accounting experience than . . . [Garrett] did. He also had more knowledge of the accounting issues that Hertz was experiencing at that time.   He interviewed better and was able to convey complicated information more concisely and clearly than . . . [Garrett,]" Doc. 44-19 at 3, First Supplemental Response to Interrogatory No. 17, with certain statements in the EEOC's Determination issued after its investigation.   See Doc. 44-26.   Assuming without deciding that the EEOC Determination is admissible,[29] the Court in these circumstances finds that it should

---

Moreover, to the extent that Garrett has complained that Allen did not forewarn interviewers "as to how he would make his decision[,]" Doc. 44-10, ¶ PF4(A), or require interviewers to "utilize company-provided documents for [ranking or evaluating] . . . candidates," id., the Court finds such alleged irregularities would have affected both applicants equally.

[29]See Blanton v. University of Florida, 273 Fed. Appx. 797, 804 (11th Cir. 2008)(EEOC determinations are generally admissible under public records and reports exception to the hearsay rule, see Rule 803(8)(C), F.R.E., but may be excluded from evidence in a jury trial under Rule 403, F.R.E.); Palage v. HCA-HealthONE, LLC, 2012 WL 5493998 *9-10 (D. Colo. November

consider Hertz's Statement of Position, see Doc. 44-27, in its entirety rather than rely only on the selected excerpts recited by the EEOC. In that document, Hertz asserted that "Garrett did not have any public accounting experience while Bryan had over four years of experience with both PwC and Grant Thorton[,]" id. at 3, and that "Allen believed that Bryan's public accounting experience along with his understanding of the expectations of external auditors, such as PwC, made him the better qualified candidate for the position." Id.

That the language in Hertz's discovery documents "may not have comported precisely with . . . the language in," Hysten, 415 Fed. Appx. at 908, Hertz's EEOC papers does not in this instance give rise to any suggestion of gender discrimination. Hertz's explanation for Bryan's promotion as well as its repeated reference to public accounting experience with a large public accounting firm has remained consistent. Accordingly, in viewing the evidence in the light most favorable to Garrett, the Court finds that Garrett has failed to demonstrate pretext based on her contention that Hertz has provided varying reasons for her nonselection as Director.

Finally, Garrett has argued that Hertz's "conflicting and inconsistent evidence regarding the individual(s) who selected [the] members of the interview panel and [who interviewed the applicants as well as] Dugan's involvement with the . . . panel[ists] and selection decision[,]" Doc. 44 at 32, is evidence of gender discrimination.

"Minor inconsistencies . . . do not constitute evidence of pretext; rather, only those inconsistencies that allow 'a reasonable factfinder [to] rationally find [the defendant's

---

13, 2012)(no Tenth Circuit authority for the proposition that EEOC finding of reasonable cause is admissible for ruling on summary judgment).

proffered reasons] unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons' are probative of pretext." Hysten, 415 Fed. Appx. at 908 (citation omitted).

While Hertz's initial and supplemental interrogatory responses may differ in part from the testimony of Allen regarding the identity of the panelists[30] and Teddy's testimony may differ slightly from Allen's testimony regarding the individual who selected the panelists,[31] the Court finds the discrepancies in the discovery responses and deposition testimony on which Garret has relied do not give rise to an inference that Hertz's explanation for its decision to select Bryan as Director is pretextual and unworthy of belief.

Based upon the foregoing, the Court finds that Garrett has failed to set forth specific evidence that could support the conclusion by a reasonable juror that Hertz's

---

[30]See n.5, supra.  Whether the other panelists could or could not remember whether Dugan did or did not interview Bryan is not significant since it is undisputed that Dugan provided feedback on both applicants, see Allen Deposition at p. 40, lines 19-23 ("I was under the impression that [Dugan] . . . interviewed both . . . [b]ecause when we went through the feedback exercise, he had comments on both"), and equally undisputed that Allen was the final decisionmaker.

[31]Compare Teddy Deposition at p. 21, lines 1-6 (Q. Does [H]uman [R]esources have any input or say as to particular individuals that need to be on a specific interview panel?  A. If we're asked, we give input. . . ."); id. lines 19-22 ("Q. What other positions would a member of HR be a part of an interview panel?  A. Sometimes manager positions, but not always.  But most manager positions and all director level."); id. at p. 21, line 23 to p. 22, line 2 ("Q. And then other than the hiring manager and an individual from HR, if there are additional participants from HR, if there are additional participants to the interview, those individuals are selected by the hiring manager?  A. That's correct."); id. at p. 60, lines 24-25 ("Q. And who selected those individuals [involved in interviewing Garrett]?  A. Graham Allen.") with Allen Deposition at p. 34, lines 6-9 ("Q. Who makes the decision as to the members of the interview panel?  I think it varies.  Typically it's done by a combination of HR and the hiring manager."); id. lines 19-25 ("Q. And as the hiring manager, were you the individual who selected the members of that interviewing panel?  A. Not alone. . . . [T]he decision on . . . and the selection of that was done, I believe, in association with HR, either . . . Teddy or . . . Williams, I don't recall which.").

proffered rationale for its decision to promote Bryan is a pretext for gender discrimination.[32]  E.g., Tran, 490 Fed. Appx. at 118 (to oppose summary judgment, plaintiff must do more than provide subjective interpretation of evidence; she must marshal admissible evidence of material fact).  Because summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which th[at] party will bear the burden of proof at trial[,]" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Court finds that Hertz is entitled to judgment as a matter of law on Garrett's Title VII and OADA gender-based discrimination claims.[33]

Based on the foregoing, the Court

(1) GRANTS Hertz's Corrected Motion for Summary Judgment [Doc. 38] filed on March 31, 2017, to the extent the Court

(a) DISMISSES without prejudice Garrett's federal and state law claims based on retaliation and hostile work environment (as well as her constructive discharge claim to the extent, if any, such claim is separate and independent[34]) for failure to exhaust administrative remedies; and

---

[32]See Johnson, 594 F.3d at 1211 (to support inference of pretext, plaintiff must produce evidence that employer did more than get it wrong; she must come forward with evidence that employer did not really believe its proffered reasons for action and thus may have been pursuing hidden discriminatory agenda).

[33]Having found Hertz is entitled to summary judgment on this claim, the Court finds moot the parties' arguments regarding Hertz's "Third Affirmative Defense" and Garrett's mitigation of damages.

[34]See n.13, supra.

(b) FINDS that Hertz is entitled to judgment as a matter of law on Garrett's federal and state law claims based on gender discrimination;

(2) DENIES Garrett's Motion for Partial Summary Judgment [Doc. 36] filed on March 31, 2017; and

(3) ORDERS judgment to issue forthwith.

ENTERED this ___17th___ day of May, 2017.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

26